**Robert L. CORRIGAN, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD, INC., Defendant.**

Civ. No. 4–84–5.

United States District Court, D. Minnesota, Fourth Division.

June 17, 1985.

Kevin Shea and Terence J. McCloskey, Johnson, Sands, Lizee, Fricker & McCloskey, Minneapolis, Minn., for plaintiff.

Douglas Werner, St. Paul, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff, Robert L. Corrigan, brought this action for damages against defendant, Burlington Northern Railroad, Inc. (Burlington Northern) alleging that it negligently and inadequately protected him from developing contact dermatitis. Jurisdiction is alleged under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* The matter is now before the court upon defendant's motion for summary judgment.

*Background*

The pertinent facts appear to be as follows. Plaintiff began to work for the predecessor of defendant, Great Northern, in 1943. Sometime in 1965, he began experiencing rashes on his hands and arms while working as a machinist helper. He then sought medical treatment from a Great Northern doctor, Dr. Lynch, who told him that he had dermatitis. In July 1967, plaintiff was referred to doctors David W. Anderson and Harold G. Ravits by a railroad claims agent. Plaintiff states that he saw these doctors intermittently for treatment of what was diagnosed as a "skin rash" or "eczema". He says that he was not treated by any other doctors between July 1967 and January 1982 for his ailment. Defendant notes that plaintiff had a routine physical check-up in February 1972 where he acknowledged that he had been suffering from eczema since 1965.

In June 1976, plaintiff was transferred to the Jackson Street wheel shop of Burlington Northern. He worked on the wheel

machine and had little contact with solvents and oil. The next year he was again transferred, this time to the Northtown shop. His duties at this shop caused him to be regularly exposed to grease, oils, and solvents. After six or eight months of work at this shop, plaintiff broke out with skin rashes and filed an injury report. Dated January 20, 1978, the report describes the injury as "skin rash to hands and arms." Plaintiff states that a Burlington Northern claims agent then told his shop to keep him away from grease and oil. Subsequently, however, plaintiff was assigned to work as an "index cutter", which also entailed contact with grease and oils on a regular basis.

In June 1982, plaintiff sought treatment from Joseph G. Brennan, M.D. because of a severe skin rash on his hands, feet and lower legs. Burlington Northern notes that plaintiff reported to Dr. Brennan that he had had dermatitis for seventeen years. Dr. Brennan determined that plaintiff had severe dermatitis and a sensitization reaction. Because of this sensitization, Dr. Brennan stated that "even an infinitesimal amount of irritant" could cause a flare up with varying degrees of severity. In Dr. Brennan's opinion, plaintiff's occupational dermatitis and "sensitization status" caused him to be 20 percent permanently disabled. Dr. Brennan recommended that he cease working with industrial chemicals. Plaintiff states that he ceased employment with Burlington Northern about April 3, 1983 because its officials "forced" him to quit since he was unable to work with grease, oils or other solvents without adverse skin reaction. He was awarded disability benefits beginning on that date.

On January 3, 1984, plaintiff filed this suit. Burlington Northern then filed its motion for summary judgment.

*Discussion*

In passing upon a motion for summary judgment, the court is required to view the facts in a light most favorable to the non-moving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983); *Ralph's Distributing Co. v. AMF, Inc.,* 667 F.2d 670 (8th Cir.1981). The non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials of the party's pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981).

Burlington Northern contends that 45 U.S.C. § 56 bars plaintiff's action since he did not commence his suit within three years from the day his cause of action accrued. It argues that he knew he had a work-related disease called dermatitis in 1965, and should have brought suit at that time.

Plaintiff asserts, by contrast, that although he knew he had a skin condition in 1965, he did not know that he had contact dermatitis which could lead to systematic sensitization and disablement. He argues, therefore, that his cause of action did not accrue until, at the earliest, Dr. Brennan diagnosed his condition as disabling contact dermatitis on November 11, 1982. In addition, plaintiff states that his injury resulted from the continuing negligence of the defendant in assigning him to jobs which regularly exposed him to solvents and grease. He argues that the statute of limitations only runs in such cases from the time the wrong ceased. In the instant case, the wrong did not cease, according to plaintiff, until his last exposure to those harmful substances on April 3, 1983.

45 U.S.C. § 56 sets the limitation period for cases brought under the FELA and provides:

> No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

In cases involving industrial diseases, the cause of action accrues "when the accumulated effects of the deleterious substance manifest themselves." *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949). Thus, the statute of limitations is tolled until the employee is aware or should be aware of his condition. *Id., Fletcher v. Union Pac.R. Co.,* 621 F.2d 902, 906 (8th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981).

Defendant argues that plaintiff was told in 1965 that he had work related contact dermatitis and cites the statements of Drs. Ravits and Anderson made in late 1984 and early 1985 to that effect. It also relies on *Felix v. Burlington Northern, Inc.,* 355 F.Supp. 1107 (D.Minn.1973), and *Emmons v. Southern Pacific Transp. Co.,* 701 F.2d 1112 (5th Cir.1983), for authority that the cause of action accrued on the day plaintiff's work-related symptoms first appeared, regardless of whether the full extent of the injury is known at the time, or that the injury is diagnosed as work-related by a doctor.

These cases are factually distinguishable, however. *Felix v. Burlington Northern, Inc.,* 355 F.Supp. 1107 (D.Minn.1973) dealt not with an occupational disease, but with injuries resulting from a traumatic accident. Similarly, the court in *Emmons v. Southern Pacific Transp. Co.,* 701 F.2d 1112 (5th Cir.1983), found that plaintiff's problem was related to a preexisting condition and was not "true occupational disease." 701 F.2d at 1122.

■ Construing the evidence most favorably to plaintiff, the court finds that a material issue of fact remains as to when plaintiff became aware that he had work-related contact dermatitis. While plaintiff gave a statement back in 1965 about a "skin condition" he contracted, the record at this point does not clearly show that he knew that this rash was the same skin disease for which he now claims damages. *See Gulf, Colorado & Santa Fe Railway Co. v. McClelland,* 355 F.2d 196 (5th Cir. 1966). *Cf. Coots v. Southern Pacific Co.,*

49 Cal.2d 805, 322 P.2d 460 (1958) (Limitations period under FELA did not begin to run for injuries due to dermatitis until condition became quite severe and debilitating). Nor do the reports filed by Drs. Anderson and Ravits after plaintiff began this litigation demonstrate that plaintiff was informed that he had contact dermatitis prior to Dr. Brennan's 1982 report. Various other railroad reports filed over the years allude merely to a "skin rash" or "eczema".

■ Additionally, summary judgment is inappropriate because plaintiff may be able to recover under a theory of negligent assignment. Where injury results from a negligent act and the injury occurs by reason of continued negligence, "a recovery may be had for damages caused by the continuing negligence although a cause of action based on the original negligent act is barred." *Fletcher v. Union Pac. R. Co.,* 621 F.2d 902, 907–908 (8th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). Under this theory, the FELA statute of limitations may be tolled until the final day the employee was subjected to the conditions causing injury. *Id.* at 908; *Fowkes v. Pennsylvania R.R.,* 264 F.2d 397 (3d Cir.1959). Viewing the record in a light most favorable to plaintiff, the court finds that plaintiff's duties involved exposure to oils, grease, and solvents until his last day of work on April 3, 1983. Accordingly, plaintiff's January 3, 1984 filing would be timely as to the negligent assignment claim. Plaintiff is therefore entitled to present to the jury the issues of whether defendant's assignment of his duties was in fact negligent and whether the assignment caused his present condition.

Since the court has determined that summary judgment is inappropriate because issues of material fact remain as to when the cause of action accrued and the negligent assignment claim, it need not address plaintiff's arguments as to waiver and estoppel.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that defendant's motion for summary judgment is denied.